No. 20,836.

A. M. EVERHART, *Appellee,* v. CLINT WELCH, *Appellant.*

SYLLABUS BY THE COURT.

1. REGISTRATION—*Pedigreed Stallion—Construction of Statute.* In this state registration of breeding animals is registration conformably to the statute, which adopts as the standard the stud books of the various horse pedigree registry associations recognized ·by the United States department of agriculture, and none others.

2. SALE—*Percheron Stallion—False Representation as to Registration.* A representation made to induce the sale of a stallion, that he was a registered Percheron, was a representation that he was a Percheron regularly registered conformably to the statutory standard.

3. TRIAL—*Instructions.* Criticism of instructions to the jury considered, and held to be without substantial merit.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed May 12, 1917. Affirmed.

*Maurice Murphy,* of St. Marys, *A. E. Crane, Oscar Raines, R. F. Hayden, Robert S. Heizer,* and *George P. Hayden,* all of Topeka, for the appellant.

*C. B. Daughters,* of Manhattan, and *E. M. Brunner,* of Wamego, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for false representations made by the defendant to induce the plaintiff to purchase a stallion. The plaintiff recovered and the defendant appeals.

The petition alleged that the defendant represented the animal was a regularly registered Percheron stallion, and the certificate of registration was all right except a mistake as to the date of foaling, which the defendant would have corrected. Relying on the representations, the plaintiff purchased the stallion near the beginning of the season for use, and advertised him as a regularly registered Percheron. The representations were false, and the plaintiff was obliged to withdraw the stallion from service.

At the time the stallion was purchased, the state law required every person standing ·a stallion to cause the name,

description, and pedigree of the stallion to be enrolled with the state live-stock registry board, and to procure a certificate of such enrollment, designated in some sections of the statute as a license certificate. The license certificate for a pure-bred stallion contained the following, besides other information: certificate number, registration number, breed, and pedigree. A copy of the certificate was required to be posted over the main door of the barn where the stallion was kept, and to be inserted in all bills, posters, and advertisements. (Gen. Stat. 1909, §§ 9075, 9078-9080.) The statute also contained the following provision:

"The officers of the live-stock registry board, whose duty it shall be to examine and pass upon the merits of each pedigree submitted, shall use as their standard the stud-books and signatures of the duly authorized presidents and secretaries respectively of the various horse pedigree registry associations, societies or companies recognized by the United States Department of Agriculture, Washington, D. C., and shall accept as pure-bred, and entitled to a license certificate as such, each stallion for which a correct pedigree registry certificate is furnished bearing the signature of the president and secretary of a government-recognized and approved stud-book." (§ 9077.)

The proof was that the stallion was a three-quarter bred Percheron, was ineligible to registration in standard stud-books, and was ineligible to certification by the state live-stock registry board as other than grade. The stallion was registered in the American Horse Registry Association of Des Moines, Iowa, an association which the state board can not recognize, and which, whatever the purpose of its organization, readily lends itself to the perpetration of fraud in the sale of breeding animals. Here are some of the qualifications for registration:

"6. All stallions or mares that are 15¾ hands high or over and will weigh 1500 pounds or more and can walk a mile in 15 minutes or better.

"7. Any stallion that can start and draw a load of 3 tons one rod on a 4 wheeled wagon on a level dirt road, provided the horse is a three-fourth blood or better of any recognized draft breed.

"8. Any stallion or mare that has taken any premium in draft classes at any fair, provided the animal will weigh 1500 pounds or over and is up to standard in other requirements."

Certificates of registration of stallions may be obtained from this association for ten dollars. By joining the association you can get certificates at half price. The defendant, who

has been in the horse business all his life, testified on cross-examination as follows:

"Q. You knew their terms? A. Yes, sir.
"Q. You know that they claimed to register all kinds of horses under heaven? A. Yes, sir.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Do they register the breed? A. They register as to the conformation.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Do you say that you believed that was a regularly recognized registration when you turned that certificate over to Everhart? A. That is where I had him registered, and that is the way I traded him off."

The evasion of the last question by the last answer is significant. The defendant testified he told the plaintiff the stallion was registered in the Iowa Horse Registry Association; papers could not be given because there was a mistake as to the stallion's age; he said nothing else about registration, and he said nothing about the stallion being a full-blood Percheron or a regularly registered Percheron. The plaintiff's testimony indicated that the talk was about breed and pedigree. He told the defendant he wanted a horse with a good pedigree—that was what he was needing him for. The defendant said the stallion was a registered Percheron, a registered Percheron which the state would back; he had such papers; the paper was the pedigree of the horse; the pedigree needed correction, however, and it would be sent in to be corrected. The American Horse Registry Association of Des Moines, Iowa, was not mentioned. The plaintiff testified further as follows:

"Q. Anything said about the state registration? A. I asked him whether he had had him examined by the state man, and he said he had; I wanted to see the certificate that he had from the state man, and he said that he would not get it until he got the matter straightened up with the registration company."

In the instructions to the jury the court stated the defendant's claims and told the jury they should return a verdict for the defendant if they found the facts to be as he testified. In stating the plaintiff's claims to the jury the court said:

"That for the purpose of inducing the plaintiff to accept the stallion at the agreed price the defendant falsely represented to the plaintiff that the said stallion was a Percheron stallion regularly registered under the requirements of the laws of the state of Kansas; that the plaintiff believed the representations of the defendant to be true and relied thereon

and purchased the stallion at the agreed price; but that in truth and in fact the said stallion was not so registered, and was not eligible to registration in the state of Kansas as claimed and warranted by the defendant, and that the defendant so knew at the time of his misrepresentations."

The court further instructed the jury as follows:

"If you find from the evidence in the case that at the time the defendant sold the stallion to the plaintiff he warranted such stallion to be regularly registered under the laws of the state of Kansas as a Percheron stallion, and that such warranty was not true, and that by reason thereof the plaintiff was damaged thereby, then you will return a verdict for the plaintiff."

The defendant contends that the allegation of the petition that the stallion was a "regularly registered Percheron" was not proved, that the court was not authorized to bring into the case registration under the requirements of the laws of the state of Kansas, and that the court transformed the cause from one for false representations to one for breach of warranty. Judging from the record alone, and not from experience, the court is inclined to the opinion that points like these would be fine points in a horse trade. However this may be, the affair between the plaintiff and the defendant has, now lapsed into a common court proceeding, and the crude and callous standard of substantial justice will have to be applied.

The issue was fraud, and clear proof of the substance of the issue was sufficient. There is registration of breeding animals, or there is not. Fake registration of the kind dealt in by the defendant can not be recognized as registration. A registered stallion is a stallion regularly registered conformably to the statutory standard. While the instruction stating the plaintiff's claim might have been more carefully phrased, the meaning was clear, and the court added nothing to the force of the pleaded representation which the law did not attach to it. Proof that the stallion was represented to be a "registered Percheron," and a "registered Percheron which the state would back," sustained the charge that the stallion was represented to be a regularly registered Percheron. The issues were clearly placed within the grasp of the jury, and the inadvertent use of the words "warranted" and "warranty" for "represented" and "representation" was quite inconsequential.

The judgment of the district court is affirmed.